UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM J. MURRAY,

                          Plaintiff,

        v.

TOM TANEA, All in Their Individual, and Official
Capacities Within the New York State Department
of Corrections (DOCCS) and Civil Service, et al.,

                          Defendants.
_____

<u>DECISION AND ORDER</u>

16-CV-6525DGL

      In this latest chapter of litigation that stretches back to 2008, plaintiff William Murray, who at all relevant times was employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), has sued nineteen individuals, all of them DOCCS employees, alleging that they have unlawfully retaliated against him because of plaintiff's exercise of his rights under the First Amendment. Defendants seek summary judgment dismissing the complaint.

**BACKGROUND**

      Unless otherwise noted, the following facts and allegations are taken from the Third Amended Complaint ("TAC"). .(Dkt. #64.)[1]  Plaintiff alleges that he began working for DOCCS in 1997, and that over the course of his career he has worked at several correctional facilities as a

---

[1] Since the Third Amended Complaint is now the operative pleading in this action, all further references to "the complaint" will be understood to mean the Third Amendment Complaint, unless otherwise noted.

substance abuse counselor for inmates. In April 2004, he was transferred to Five Points Correctional Facility.

The complaint states that "[b]eginning in May, 2004, and continuing thereafter, plaintiff began reporting to his superiors the existence of fraud with respect to various programs attended by inmates at Five Points." TAC ¶ 32. For example, plaintiff alleges that he reported that inmates were falsely being reported to have attended certain programs within the facility, which meant that inmates were receiving pay for programs they had not attended, and that some inmates were qualifying for early release, based on the false appearance that they had completed such programs. *Id.* ¶¶ 34, 35. Plaintiff alleges that he made these reports not only to his superiors at Five Points, but to various New York State officials. He states that he was ordered by his superiors at Five Points, specifically defendants Tanea, Colvin and Jones, not to send his complaints about these matters up the chain of command or to any agency with oversight of DOCCS.

Plaintiff also alleges that he suffers from a back condition which requires him to limit the amount of walking he does and the distance he drives to and from work, and to wear sneakers and use a padded chair at work. He states that beginning in 2008 and for years afterward, defendants denied him reasonable accommodations for his ailment, *e.g.* by denying him permission to wear sneakers at work even though other employees were allowed to do so. Plaintiff alleges that defendants did so to punish him for his reports of fraud within DOCCS.

Eventually plaintiff brought an Article 78 proceeding in New York State Supreme Court over his requests for accommodations, and in February 2011, the state court issued a decision finding that there was probable cause to believe that DOCCS had unlawfully discriminated

against plaintiff on account of a physical disability, and that a hearing would be necessary to decide the merits of the case. (Dkt. #160-3 at 49-55.) After that decision was issued, plaintiff and DOCCS entered into a settlement of his claims by agreeing that plaintiff could have certain accommodations (*e.g.*, being allowed to wear sneakers) in accordance with his physical limitations. (Dkt. #160-3 at 60-61.)

By that point, plaintiff had also commenced litigation in this Court. In August 2008, plaintiff brought an action against the State of New York, DOCCS, and twenty-two individuals (six of whom are also named as defendants in this case), asserting claims under 42 U.S.C. § 1983. *Murray v. Coleman*, 08-CV-6383.[2] In that case, plaintiff alleged that the defendants violated his constitutional rights to free speech and due process, by retaliating against him for having reported fraud and wrongdoing within DOCCS.

After the Court dismissed plaintiff's due process claim and his claims against New York State, DOCCS, and several of the individual defendants, the case proceeded to trial on plaintiff's First Amendment retaliation claim against the remaining individual defendants. On June 8, 2016, the jury returned a verdict finding no cause of action against seven of those defendants, but also found that plaintiff had established his claims against two defendants, John Lempke and Thomas Poole. The jury awarded $6500 in economic damages. The Court entered judgment for plaintiff and later denied defendants' post-trial motion for judgment as a matter of law. *Murray v. Coleman*, 232 F.Supp.3d 311 (W.D.N.Y. 2017).

---

[2] Although New York State was the lead defendant in that case, the State was later dismissed as a defendant, and for the sake of convenience and clarity the action will be referred to herein as "*Coleman*."

In the case at bar, which was brought in July 2016, plaintiff alleges (and defendants agree) that on June 9, 2016–the day after the jury rendered its verdict in *Coleman*–Five Points Superintendent John Colvin ordered that plaintiff be suspended immediately, without pay. (TAC ¶ 75; Dkt. #157-4.) DOCCS Director of Labor Relations issued a Notice of Discipline ("NOD") against plaintiff four days later. (Dkt. #157-5.) The basis for both the suspension and the NOD was that during an Alcohol and Substance Abuse Treatment group meeting in September 2015, plaintiff had made disparaging comments about DOCCS generally and about certain staff members. Plaintiff was also alleged to have lied about these matters when he was asked about them by DOCCS investigators, and to have made false statements in connection with a grievance that two inmates had filed against him, also in September 2015. The NOD stated that based on those instances of misconduct, the penalty to be imposed was "dismissal from state service and loss of any accrued medical leave." (Dkt. #157-5 at 2.)

Plaintiff grieved the NOD, and exercised his contractual right to arbitration. On June 30, 2017, the arbitrator, Jacquelin F. Drucker, Esq., issued an award (Dkt. #157-7) in which she found that plaintiff was guilty of one charge, which alleged that he had made negative comments about a particular DOCCS official. She also found that plaintiff's guilt on two other charges had been established in part, insofar as plaintiff should not have made certain comments to inmates that were critical of DOCCS, but that the charges as written "overstate[d] the nature of [his] remarks ... ." *Id.* at 6. The arbitrator found that the remainder of the charges had not been established by a preponderance of the evidence, and dismissed those charges. She also found that "[t]he appropriate penalty to be imposed is a suspension without pay for two weeks," and that "the State did not establish that it had probable cause to suspend Grievant from employment

pending this determination." She therefore ordered plaintiff to be "returned to duty with full back pay and benefits, less a sum attributable to the two-week suspension." *Id.* at 11.

Based on these allegations, plaintiff asserts a single cause of action pursuant to 42 U.S.C. § 1983 against all the defendants, alleging that they have retaliated against him for exercising his rights protected by the First Amendment, "for both whistleblower acts and for the reporting of disability discrimination." TAC ¶ 101. Plaintiff seeks $5,000,000 in compensatory damages, $500,000 in punitive damages against defendants John Lempke, Tom Corcoran, Melina Hazlian and Kevin Ryan, and attorney's fees.[3]

## DISCUSSION

"To survive a motion for summary judgment on a First Amendment retaliation claim, the plaintiff must present evidence: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Severin v. N.Y.C. Dep't of Educ.*, No. 23-732-cv, 2024 WL 1904574, at *1 (2d Cir. May 1, 2024) (quoting *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022) (additional internal quote omitted)). Defendants contend that plaintiff cannot state a retaliation claim under § 1983 for a number of reasons, one of which is that none of the speech in which plaintiff engaged was protected under the First Amendment.

---

[3] The names are spelled as they are in the complaint, although the Court notes that in more recent filings, the parties have referred to "Melinda Hanzlian" and "Melinda Hanzhan." *See* Dkt. #157-2 ¶ 12; Dkt. #160 at 1.

While the First Amendment protects the right to free speech generally, the parameters of that right differ depending on the speaker and the context of the speech. In particular, First Amendment claims involving speech by a public employee are analyzed differently from claims stemming from speech by an ordinary private citizen.

A public employee who alleges First Amendment retaliation must prove that: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (internal quotation marks and citations omitted); *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 94 (2d Cir. 2020) (same). In evaluating such a claim, a court must first evaluate whether the speech is "of public concern"; if it is, then the question becomes whether the public employee spoke as a "citizen." *See Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 420–22, 424 (2006)). *See also Specht v. City of New York*, 15 F.4th 594, 600 (2d Cir. 2021) ("The speech of a public employee is protected by the First Amendment when the employee speaks as a citizen on a matter of public concern, rather than pursuant to his employment responsibilities"). To assess plaintiff's First Amendment claim in this case, the Court must therefore determine what speech or activity underlies the claim, and whether it is protected under the First Amendment.

With respect to plaintiff's speech, the complaint alleges that: "for many years plaintiff has reported DOCCS' illegal and improper practices" to DOCCS officials and to other state and federal agencies and officials; that he has "submitted complaints and appeals to the New York State Division of Human Rights and the Seneca County Supreme Court" (referring to plaintiff's

Article 78 proceeding); and that he "commenced a federal lawsuit against DOCCS officials, which ultimately resulted in Plaintiff securing a monetary judgment against several of the DOCCS defendants for whistleblower retaliation." (TAC ¶¶ 97-99.)  Plaintiff alleges that "[a]ll of the foregoing actions by plaintiff were protected by the First Amendment to the U.S. Constitution." *Id.* ¶ 100.

As alleged in the complaint, then, plaintiff's activity may be grouped into three categories:  (1) "whistleblower" activity, *i.e.*, reporting alleged fraud and other wrongdoing within DOCCS; (2) complaining about disability discrimination; and (3) bringing a lawsuit (the *Coleman* action) against DOCCS officials.

With respect to the second of these categories, defendants argue that "complaints about failure to provide reasonable accommodations are not a matter of public concern," and that plaintiff's complaints about disability discrimination implicated only "a private personnel matter between DOCCS and Murray [that] do not qualify for constitutional protection." (Dkt. #157-3 at 9-10.)  In his responding brief, however, plaintiff states that he is *not* alleging that his requests for reasonable accommodations were in themselves protected speech, but that defendants' "denial of reasonable accommodation was an ongoing/continuous form of whistleblower retaliation, motivated by retaliatory animus intended to cause Plaintiff's total disability, and by extension remove Plaintiff from employment in order to suppress his access to evidence of Defendant's fraud and illegal acts." (Dkt. #160-1 at 11.)  Despite the complaint's allegation that defendants retaliated against him "for the reporting of disability discrimination," then, plaintiff appears to have abandoned any First Amendment claim based on his requests and complaints about reasonable accommodations or disability discrimination.

As to the third category–filing the *Coleman* lawsuit–it is noteworthy that although the complaint includes the filing of the suit among plaintiff's protected activities, it does not expressly allege that defendants retaliated against plaintiff for that particular act, as such. The complaint alleges that defendants "willfully retaliated against plaintiff for exercising rights protected by the 1st Amendment to the United States Constitution for both whistleblower acts and for the reporting of disability discrimination," TAC ¶ 101, but not for bringing a lawsuit.

In other words, to the extent that plaintiff alleges that defendants retaliated against him for bringing and at least partially prevailing in the *Coleman* action, that claim is subsumed within the first category of claims, for whistleblowing activity. That is consonant with Second Circuit case law, which makes clear that although the First Amendment protects "the right of the people ... to petition the Government for a redress of grievances," where public employees are concerned, the filing of a lawsuit is protected only to the extent that the suit "seek[s] to advance a public purpose." *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (affirming dismissal of First Amendment retaliation claim that "sought to redress [plaintiff's] personal grievances"). *See also Storman v. Klein*, 395 F.App'x 790, 793 (2d Cir. 2010) ("The same rule [that public employee speech is protected from employer retaliation under the First Amendment only where the employee spoke as a citizen on a matter of public concern] applies where the allegedly protected conduct is the filing of a lawsuit") (citing *Ruotolo*, 514 F.3d at 188-90); *Heusser v. Hale*, 777 F.Supp.2d 366, 378-79 (D.Conn. 2011) (a public employee's filing of a lawsuit against his employer "d[oes] not automatically constitute protected speech," but must "implicate[ ] matters of public concern"); *Kempkes v. Marvin*, No. 07-CV-11351, 2008 WL 5330673, at *9 (S.D.N.Y. Dec. 19, 2008) (rejecting "the proposition that merely filing a

complaint that states a claim of First Amendment retaliation ... is always speech on a matter of public concern for purposes of a subsequent retaliation claim"); *Carrero v. N.Y.C. Housing Auth.*, 975 F.Supp. 501, 510 (S.D.N.Y. Aug. 19, 1997) ("it is the content of the suit, not the mere fact that [plaintiff] brought a suit, that triggers First Amendment rights").

An examination of *Coleman* shows, however, that while it tangentially related to matters of public concern, in the sense that it arose out of the defendants' alleged retaliation against plaintiff for reporting wrongful conduct within DOCCS, the primary purpose behind the lawsuit was not to bring that misconduct to light, but to seek redress for plaintiff's personal grievances. The original and amended complaints in *Coleman* alleged "harassment and discrimination" against plaintiff for having reported fraud, and sought compensatory and injunctive relief, all related to plaintiff's employment. Plaintiff did not bring any claims seeking to curb the underlying alleged fraud, but to grant him a transfer and job promotion, adjust his work hours, and so on. *See* 08-CV-6383 Dkt. #1, #120. The claims raised and the relief sought in *Coleman* were thus "motivated by and dealt with [plaintiff's] individual employment situation" rather than by any desire to bring public attention to widespread or serious problems within DOCCS. *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993).

The *Coleman* suit therefore did not constitute protected activity giving rise to a First Amendment claim. *See Gusler v. City of Long Beach*, No. Civ. 2077, 2016 WL 11493644, at *27-28 (E.D.N.Y. Aug. 4, 2016) (rejecting plaintiff's argument that because the "underlying issue" of his lawsuit was his speech on a matter of public concern, his "lawsuit itself becomes speech of public concern," and holding that because the lawsuit was "not a mission to protect the public welfare," but sought relief stemming from the "adverse career, financial and emotional

effects that he personally endured," the "lawsuit does not address a matter of public concern and cannot form the basis of a First Amendment retaliation claim") (internal quotes and citations omitted).

That leaves plaintiff's reports concerning alleged fraud and other wrongdoing within Five Points specifically or DOCCS generally, or what plaintiff characterizes as his "whistleblowing" activity. As stated, such activity was also what underlay the *Coleman* lawsuit.

Defendants contend that plaintiff's claim based on alleged retaliation for such speech was dealt with in *Coleman*, and that plaintiff should not be allowed to relitigate those matters in the present action. Plaintiff responds that he continued to report wrongdoing at DOCCS and that individuals within DOCCS continued to retaliate against him throughout the *Coleman* litigation and continuing "up until Plaintiff was forced to retire." (Dkt. #160-1 at 9.) That apparently occurred on April 28, 2018, *see* Dkt. #147 at 2, although it is not apparent in what sense plaintiff was "forced" to retire.

Although plaintiff asserts that this latest round of retaliation involved a somewhat different cast of characters and different events (at least in time, if not in kind), it is clear that he is relying on essentially the same type of conduct, on both his and defendants' part, as that involved in *Coleman*.

It bears mentioning here that while the *Coleman* litigation was ongoing, plaintiff filed a motion in that case to amend the complaint for a fourth time, which was denied by Magistrate Judge Jonathan W. Feldman. In doing so, Magistrate Judge Feldman stated, "Plaintiff must understand that a federal lawsuit is not an Internet blog in which every perceived grievance or offending individual can be immediately updated or added." 2013 WL 5490083, at *2. Plaintiff

appears to be using the present action in a similar fashion, as a vehicle for additional "blog posts" complaining of essentially the same conduct as in *Coleman*. Indeed, plaintiff himself alleges that he has been subject to "ongoing/continuous" retaliation, *see* Dkt. #160-1 at 11, so the claims he asserts here are essentially more of the same.

That is not to say that the *Coleman* litigation foreclosed the possibility that future claims might arise based on subsequent events, or that once *Coleman* was over, defendants were free to retaliate against plaintiff with impunity. But to the extent that plaintiff has alleged in this action that he engaged in protected speech, that speech is essentially the same speech as in *Coleman*, and plaintiff's claims relating to that speech were addressed in that action. There is no basis to relitigate those claims here.

Similarly, much of the retaliation that plaintiff alleges here was also alleged in *Coleman*, and either predated that action or took place while it was pending. Plaintiff has alleged in this lawsuit, for instance, that defendants retaliated against him by denying plaintiff's repeated requests for a transfer to a facility closer to his home. That was not something that arose after *Coleman* ended, however, but was an ongoing issue between plaintiff and defendants that went back well before the termination of the *Coleman* case in 2016; in fact, plaintiff expressly raised the denial of transfer requests as part of the basis for his claims in *Coleman*. *See Coleman*, No. 08-CV-6383, Amended Complaint (Dkt. #9) ¶¶ 14(c), 21(e) (alleging "[d]enial of transfers" among defendants' wrongful acts taken toward plaintiff, and requesting that Court "[a]ward plaintiff the first available closer to home transfer"). Plaintiff's request for a transfer was also an existing bone of contention at the time of the settlement of plaintiff's Article 78 proceeding in 2012. *See* TAC ¶ 70 (stating that "The only issue left unresolved by the Article 78 proceeding

was plaintiff's multiple denied requests for a transfer to a correctional facility closer to home"); *see also Coleman*, 2013 WL 5490083, at *2 n. 1 (discussing plaintiff's Article 78 proceeding and settlement).

The one alleged act of retaliation that did post-date the matters at issue in *Coleman* was defendants' attempted termination of plaintiff the day after the *Coleman* verdict was reached. But even construing the record in the light most favorable to plaintiff, and assuming that defendants' actions were motivated by retaliation, the retaliation would have been for the *Coleman* lawsuit, not for the underlying whistleblowing activity that led up to it. As explained, the suit itself was not a matter of public concern, as it dealt only with plaintiff's private interests. *See Ruotolo*, 514 F.3d at 190 ("[A] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run") (citation and quotation marks omitted)); *Singer v. Ferro*, 711 F.3d 334, 340 (2d Cir. 2013) (First Amendment protection does not extend to complaints that are of "marginal public interest" or are the "private ventings of disgruntled public employees") (citation and quotation marks omitted).

The Court concludes, therefore, that this action must be dismissed. Most of the activity relied upon by plaintiff, on both his and defendants' part, was litigated in the *Coleman* action, and there is no basis to resurrect and relitigate it here. To the extent that plaintiff has alleged activities and events that were not litigated in *Coleman*–specifically, defendants' attempt to terminate plaintiff, allegedly in retaliation for plaintiff's having brought and partially prevailed in the *Coleman* action–plaintiff's claim fails because the *Coleman* case was not a matter of public concern, but was brought to seek redress for injuries personal to plaintiff.

Although for these reasons this action must be dismissed, several other matters warrant mention, particularly regarding certain affidavits that plaintiff submitted in opposition to defendants' motion.

Two of those affidavits are denominated as "expert witness" affidavits of William R. Bills (Dkt. #160-2 at 13) and Timothy P. Walsh (Dkt. #160-2 at 17), both of whom are DOCCS retirees. Both Bills and Walsh opine that plaintiff was denied a transfer in retaliation for his whistleblowing activities, and that certain video recordings that DOCCS used during an internal investigation of plaintiff have been deliberately edited, presumably to make them more damning with respect to plaintiff.

Neither Bills nor Walsh was never identified as an expert witness, however; plaintiff's Rule 26 disclosure (Dkt. #147) identified only two experts, Matthew McCabe, M.B.A., J.D., and Tobias A. Mattei, M.D., whose reports relate to plaintiff's claimed economic losses and medical history, respectively. Moreover, even if Bills or Walsh had been so identified, neither of them is qualified to offer an opinion, expert or otherwise, on the reason why plaintiff's transfer requests were denied.

In addition, although Bills and Walsh both state that during their DOCCS employment they had occasion to review many video and audio recordings in connection with various investigations, their opinions about the recordings in question appear to be based not on any specialized or technical expertise but on the sorts of observations that any layperson with a modicum of familiarity with video recordings could make, such as whether there are obvious gaps in the time counter displayed on the screen.

Although not denominated an expert, another retiree, Harold A. Smith, likewise opines in his affidavit (Dkt. #160-4 at 48) that Murray was "intentionally targeted ... as a direct result of 'whistleblowing' activities .. ." ¶ 8. Based on what is contained in Smith's affidavit, such opinion testimony does not meet the requirements of Federal Rule of Evidence 701, which permits lay witnesses to offer opinion testimony as long as it is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and not expert opinion within the scope of Rule 702. Smith provides few factual particulars in support of his opinion, aside from saying that he heard "several supervisors make negative comments about Mr. Murray," and that in his opinion "many of the [negative] comments" contained in plaintiff's annual evaluations had no factual basis. *Id.* ¶¶ 3, 7.

Although lay witnesses may offer opinions that are "both (a) based on the witness's first-hand perceptions and (b) rationally derived from those first-hand perceptions," *United States v. Hild*, 644 F.Supp.3d 7, 47 (S.D.N.Y. 2022) (emphasis in original), Smith's vague references to "common knowledge" that plaintiff was being retaliated against do not meet that standard. *See Abdus-Sabur v. Port Auth. of New York & New Jersey*, No. 00 CIV. 5496, 2001 WL 1111984, at *1 (S.D.N.Y. Sept. 20, 2001) ("[w]itnesses are free to testify fully as to their *own observations* of the defendant's interactions with the plaintiff or other employees") (emphasis added).

Plaintiff has also submitted an expert report by Tobias A. Mattei, M.D. As noted above, Dr. Mattei, a neurosurgeon, was identified as an expert in plaintiff's Rule 26 disclosure. Much of his report concerns the types of accommodations that plaintiff would have required at work, such as orthopedic footwear, limited sitting time, etc. He also states, however, that "it is [his] expert opinion that ... the repeated denial of [plaintiff's various requests for accommodation was]

possibly suggestive of underlying prejudice or *animus* toward Mr. Murray." (Dkt. #160-2 at 62 ¶ 13.) That is not proper expert opinion testimony within the scope of Rule 702, and even if plaintiff's claims did not have to be dismissed for the other reasons stated above, Dr. Mattei's opinion about defendants' motivations would be entitled to no weight whatsoever. *See Kesler v. Puget Sound & Pac. R.R.*, No. 20-cv-6075, 2022 WL 280300, at *2 (W.D.Wash. Jan. 31, 2022) (defendant's medical expert "may not offer his opinion on Plaintiff's counsel's possible motivations or legal strategy").[4]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #157) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 2, 2024.

---

[4] The Court's conclusion that plaintiff's sole claim, for First Amendment retaliation, must be dismissed on the merits renders it unnecessary for the Court to reach defendants' arguments that plaintiff has not presented evidence of the personal involvement of all the defendants, that defendants were motivated by retaliatory animus, or that defendants are entitled to qualified immunity.